**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

QING TU,

Petitioner,

v.

JAMES JANECHA, et al.,

Respondent.

Case No. 5:26-cv-04343-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Qing Tu ("Petitioner") filed a counseled and verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition") seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. (Dkt. 1 at 2-3.) The Court has considered the Petition, Respondents' Answer, and Petitioner's Reply.

## I. FACTUAL AND LEGAL BACKGROUND

Petitioner is a national of the People's Republic of China. (Dkt. 1 at 2.) On July 20, 2022, Petitioner lawfully entered the United States on a B-1/B-2 Visa. (*Id.*) In May 2023, Petitioner filed for asylum based on the persecution she suffered in China. (*Id.*) She was granted employment authorization. (*Id.*) She obtained a Social Security Number. (*Id.*) She lawfully worked at a supermarket. (*Id.*) She is the mother of a 13-year-old United States citizen, and another child who Petitioner included on her asylum

application. (*Id*. at 2, 6.) Petitioner's asylum application remains pending. (*Id*. at 2.)

On July 13, 2026, Petitioner flew on a flight from Oakland, California, to Los Angeles, California. (Dkt. 7-1 at 2.) Upon her arrival in Los Angeles, the Los Angeles Criminal Apprehension Program served Petitioner with a Warrant for Arrest of Alien, Form I-200, and placed her under arrest without incident. (*Id*.) Petitioner was not given notice or a pre-deprivation hearing. (Dkt. 1 at 2.) Shortly thereafter, Petitioner was transported to the Adelanto ICE Processing Center where she remains detained. (*Id*.)

On August 2, 2026, Petitioner filed the Petition. (Dkt. 1 at 13.) Petitioner brings two claims for relief. (*Id*. at 13-14.) Count One is Violation of Procedural Due Process under the Fifth Amendment. (*Id*. at 13.) Count Two is Violation of Substantive Due Process under the Fifth Amendment. (*Id*. at 14.) For relief, Petitioner requests, among other things, her immediate release and that Respondents be enjoined from re-detaining her absent notice and a constitutionally adequate hearing before a neutral adjudicator. (*Id*. at 15.) As exhibits, Petitioner attached an ASC Appointment Notice dated January 28, 2023, addressed to her at a residence in Arcadia, California; and a September 13, 2023, notice approving her work authorization from October 2, 2023, to October 1, 2028, addressed to Petitioner at a different residence in Arcadia, California. (Dkt. 1-2 at 2-3.)

On August 10, 2026, Respondents filed Federal Respondents Answer to Habeas Petition. (Dkt. 7.) Respondents argue that the Court lacks jurisdiction to review the outcome of Petitioner's custody re-determination hearing. (*Id*. at 2.) Respondents also argue that Petitioner may appeal her custody determination to the Board of Immigration Appeals. (*Id*. at 3.) Respondents request that the Court deny Petitioner's habeas petition. (*Id*. at 5.) As an exhibit, Respondents attached Record of Deportable/ Inadmissible Alien, Form I-213. (Dkt. 7-1 at 1-3.) The record states that Petitioner was admitted into the United States on August 24, 2024, which is seemingly contradicted by the correspondence Petitioner received at her residence in Arcadia, California, from the Department of Homeland Security ("DHS") in 2023. (*See* Dkt. 1-2 at 2-3.) The record

further states that Petitioner "as a nonimmigrant, B2" had "authorization to remain in the United States until February 22, 2025." (Dkt. 7-1 at 3.) The record also states that Petitioner filed an Application for Asylum and Withholding of Removal on December 14, 2024, which is contradicted by Petitioner's assertions in the Petition and seemingly Petitioner's notices from DHS in 2023. (*See* Dkt. 1-2 at 2-3.)

On August 11, 2026, Petitioner filed Reply to Federal Respondents' Answer to Habeas Petition ("Reply"). (Dkt. 8.) In the Reply, Petitioner reiterates her claims in the Petition.

## II. ANALYSIS

### A. Habeas Jurisdiction

A writ of habeas corpus may be granted to any petitioner who demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B. Exhaustion

As an initial matter, the Court finds exhaustion of administrative remedies is not warranted. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v.*

*Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). However, a court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted).

Here, administrative remedies would be "inadequate and futile," as a post-deprivation bond hearing "would not address the propriety of Petitioner's claim that [she] was not afforded constitutionally adequate procedural safeguards prior to the deprivation of h[er] liberty interest." *R.N.G. v. Semaia*, No. EDCV 26-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026). Additionally, Petitioner would "suffer significant irreparable harm" in the form of continued detention "if forced to wait for an administrative appeal to be decided." *Villa v. Mullin*, No. EDCV 26-01690-JDE, 2026 WL 1583941, at *4 (C.D. Cal. June 2, 2026). For the same reason, the alternative remedy of a post-deprivation bond hearing is also inadequate to redress Petitioner's due process challenge to her detention without adequate notice and a pre-deprivation hearing. *See Gudavasov v. Marin*, No. EDCV 26-00541-AH-MBKx, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing"). Accordingly, the Court exercises its discretion to waive the prudential exhaustion requirement for Petitioner.

**C. Petitioner's Due Process Claim**

Petitioner argues that her detention since July 13, 2026, without notice and a pre-detention hearing, violates the Due Process Clause of the Fifth Amendment. (Dkt. 1 at 13-14.) The Court agrees.[1]

---

[1] Because the Court finds Petitioner is entitled to relief based on this claim, the Court declines to consider Petitioner's other claim.

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (citation modified) (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *United States v. Rivera-Valdes*, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting *Shinault*, 782 F.3d at 1057). Under the *Mathews* test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id*. (citation modified) (quoting *Shinault*, 782 F.3d at 1057).

First, Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully entered the United States in July 2022, and filed her asylum application in May 2023, Respondents "made a decision not to detain [her]" during the pendency of [her] application." *Kharitonova v. Albarran*, No. 3:26-cv-

01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026). Hence, for approximately three years, Respondents, with "full knowledge of Petitioner's identity, immigration status [,] and location during the pendency of [her] immigration application [] . . . continuously elected not to detain [her] while exercising authority over [her] legal proceedings." *Zhou v. Janecka*, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, *see* 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed her asylum application. *Zhou*, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Indeed, Respondents "deliberate[ly] acquiesce[d]" to Petitioner's continued freedom by, among other things, affirmatively granting her employment authorization while her application was pending. *Abdeltawab v. Armant*, No. EDCV 26-01520-MWF-DTBx, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026); *see* Dkt. 1 at 2. Petitioner relied on this liberty interest to live freely and "form the [] enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The length of Petitioner's freedom pending the adjudication of her asylum application only strengthens her interest in her continued freedom from immigration detention. *See Doe*, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal.

2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Accordingly, Petitioner establishes a significant private interest.

Second, the risk of erroneous deprivation is high without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). As noted, the government permitted Petitioner to remain at liberty for approximately three years after she filed her asylum application. (Dkt. 1 at 2.) During this time, the government granted Petitioner employment authorization and gave her a social security number. (*Id*.) Additionally, Petitioner maintained a clear criminal record. (*Id*. at 6.)

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate she does not pose a danger to the community or flight risk. *See Pinchi*, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of her liberty, 'the risk of an erroneous deprivation of liberty is high.'" *Zhou*, 2026 WL 2365550, at *6 (citation modified) (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could unlawfully re-detain Petitioner at any time, regardless of whether her detention serves any valid governmental interest. *See Fernandez v. Semaia*, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's

indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of her liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. Respondents do not identify any material change in circumstances justifying Petitioner's detention. *See Pinchi*, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact the government "may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining her, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Additionally, custody hearings in immigration court are "routine" and impose only a "minimal" cost. *Singh v. Bowen*, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Indeed, Respondents' delay in arresting Petitioner nearly a year and half after her visa expired only confirms "a pre-deprivation hearing was entirely feasible and required." *Galeano-Ariza v. Warden*, No. EDCV 26-4081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). Hence, the government's interest in detaining Petitioner without a pre-detention hearing is low.

Thus, Petitioner is entitled to habeas relief for her due process claim.

## III. CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS:

(1) Respondents to release Petitioner Qing Tu (A# 246-481-887) immediately under the same conditions as Petitioner was on prior to Petitioner's detention;

(2) Respondents to return all property to Petitioner that was confiscated from Petitioner when Petitioner was arrested and processed into detention;

(3) Respondents to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4) That any future enforcement actions after Petitioner's release must comply with Due Process requirements.

DATED: September 8, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge